**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DEBORAH JEANE PALFREY )<br>)<br>Defendant. )<br>)<br>AMERICAN BROADCASTING )<br>COMPANIES, INC. d/b/a ABC NEWS )<br>)<br>Non-Party Movant ) | Misc. Action No. _____<br><br>(Hon. James Robertson)<br><br>**FILED UNDER SEAL** |

**NON-PARTY AMERICAN BROADCASTING COMPANIES, INC.'S
MOTION TO QUASH SUBPOENA *DUCES TECUM***

Pursuant to Federal Rule of Criminal Procedure 17(c), Non-Party American Broadcasting

Companies, Inc., d/b/a ABC News (hereafter "ABC News"), through undersigned counsel,

respectfully moves this Court for an Order quashing the subpoena *duces tecum* issued to ABC

News at the request of Defendant Deborah Jeane Palfrey and served pursuant to this Court's

sealed Memorandum and Order dated November 13, 2007.

As explained in the accompanying memorandum of law, the subpoena should be quashed

because it: (1) seeks records unobtainable under Fed. R. Crim. P. 17(c); (2) imposes an undue

burden upon ABC News; and (3) seeks records protected from disclosure by the reporter's

privilege under the First Amendment and federal common law.

A proposed order accompanies this motion.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


/s/ Kevin T. Baine
Kevin T. Baine (No. 238600)
Kevin Hardy (No. 473941)
Carl R. Metz (No. 490633)

725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Non-Party Movant*
  *American Broadcasting Companies, Inc.*

Henry S. Hoberman
ABC, INC.
77 W. 66th Street
New York, NY  10023
(212) 456-6371
(212) 456-6565 (facsimile)

*Of Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of December, 2007, copies of the foregoing

NON-PARTY AMERICAN BROADCASTING COMPANIES, INC.'s MOTION TO QUASH

SUBPOENA DUCES TECUM, MEMORANDUM OF LAW IN SUPPORT, AND MOTION

FOR LEAVE TO FILE UNDER SEAL were served by hand-delivery and First Class Mail upon

the Defendant, Deborah Jeane Palfrey, through her counsel of record at the following address:

Montgomery Blair Sibley, Esq.
Law Offices of Montgomery Blair Sibley
1629 K Street, Suite 300
Washington, D.C. 20006


_____
Carl R. Metz

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ | ) |
|  | ) |
| UNITED STATES OF AMERICA | ) |
|  | )    Misc. Action No. _____ |
| v. | ) |
|  | )    (Hon. James Robertson) |
| DEBORAH JEANE PALFREY | ) |
|  | )    **FILED UNDER SEAL** |
| Defendant. | ) |
|  | ) |
| AMERICAN BROADCASTING | ) |
| COMPANIES, INC. d/b/a ABC NEWS | ) |
|  | ) |
| Non-Party Movant | ) |
| _____) |  |

## <u>ORDER</u>

Upon consideration of Non-Party American Broadcasting Companies Inc.'s Motion to

Quash Subpoena *Duces Tecum*, **IT IS HEREBY ORDERED**:

That the Motion is **GRANTED** and that the Rule 17(c) subpoena served upon ABC

News pursuant to this Court's Memorandum and Order dated November 13, 2007 is **QUASHED**

_____
Hon. James Robertson

Dated: _____

Copies to:

| | |
|---|---|
| Kevin T. Baine, Esq.<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005<br><br>*Attorney for Non-Party Movant* | Montgomery Blair Sibley, Esq.<br>Law Offices of Montgomery Blair Sibley<br>1629 K Street, Suite 300<br>Washington, D.C. 20006<br><br>*Attorney for Defendant-Respondent* |

**FILED UNDER SEAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ) | |
| UNITED STATES OF AMERICA ) | Misc. Action No. _____ |
| ) | |
| v. ) | (Hon. James Robertson) |
| ) | |
| DEBORAH JEANE PALFREY ) | **FILED UNDER SEAL** |
| ) | |
| Defendant. ) | |
| ) | |
| AMERICAN BROADCASTING ) | |
| COMPANIES, INC. d/b/a ABC NEWS ) | |
| ) | |
| Non-Party Movant ) | |
| _____) | |

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY
## AMERICAN BROADCASTING COMPANIES, INC.'S
## MOTION TO QUASH SUBPOENA *DUCES TECUM*

Kevin T. Baine (No. 238600)
Kevin Hardy (No. 473941)
Carl R. Metz (No. 490633)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Counsel for Non-Party Movant*
 *American Broadcasting Companies, Inc.*

Henry S. Hoberman
ABC, INC.
77 W. 66th Street
New York, NY  10023
(212) 456-6371
(212) 456-6565 (facsimile)

*Of Counsel*

FILED UNDER SEAL

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 3

ARGUMENT ........................................................................................................................ 6

I.    THE SUBPOENA SEEKS RECORDS NOT OBTAINABLE UNDER RULE 17(C)...... 6

    A.    The Subpoena Impermissibly Seeks Records That Would Not Be Admissibleas Evidence at Trial. ................................................................................................. 7

    B.    The Subpoena Improperly Seeks Information That Ms. Palfrey Could Obtain On Her Own Through the Exercise of Due Diligence. ................................................. 10

II.   THE SUBPOENA IS UNREASONABLY BURDENSOME. ......................................... 11

III.  THE SUBPOENA SEEKS MATERIALS PRIVILEGED UNDER THE FIRST AMENDMENT AND FEDERAL COMMON LAW. .................................................... 13

    A.    News Reporters Enjoy a First Amendment Qualified Privilege for News Gathering Activities. ........................................................................................... 14

    B.    Comparable Protections Exist Under Federal Common Law. .............................. 17

    C.    Ms. Palfrey Cannot Make the Required Showing To Overcome ABC News's Qualified Privilege. ............................................................................................. 18

CONCLUSION .................................................................................................................... 21

FILED UNDER SEAL

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Alexander v. FBI*, 186 F.R.D. 21 (D.D.C. 1998) ................................................................13, 18, 19

*Atkins v. Fischer*, 232 F.R.D. 116 (D.D.C. 2005)................................................................8

*Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972) ......................................................14, 19

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951)......................................................6, 7

*Branzburg v. Hayes,* 408 U.S. 665 (1972) ..............................................................................2, 11

*Cheney v. U.S. District Court for District of Columbia*, 542 U.S. 367 (2004)..............................7

*Clyburn v. News World Communs., Inc.*, 903 F.2d 29 (D.C. Cir. 1990) ....................................13

*Gonzales v. National Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999)................................12, 13, 14

*Gray v. Hoffman-La Roche*, No. 02-136, 2002 WL. 1801613
(D.D.C. Mar. 27, 2002)................................................................................................19, 20

*Hatfill v. Gonzales*, 505 F. Supp. 2d 33 (D.D.C. 2007) ................................................................18

*Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115 (D.D.C. 2002)....................13, 15, 18, 19

*In re Application to Quash Subpoena to National Broad. Co.*,
79 F.3d 346 (2d Cir.1996)................................................................................................19

*In re Consumer's Union*, 495 F. Supp. 582 (S.D.N.Y. 1980) ......................................................12

*In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395 (E.D. Mich. 2003) .................12

*In re Grand Jury Subpoena (Judy Miller)*, 397 F.3d 964 (D.C. Cir. 2005)............................15, 16

*In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291 (4th Cir. 1987)................11

*In re Petroleum Products Antitrust Litigation,* 680 F.2d 5 (2d Cir. 1982) ..............................18, 19

*Jaffee v. Redmond*, 518 U.S. 1 (1996) ................................................................................17, 18

*Kallstrom v. City of Columbus*, 165 F. Supp. 2d 686 (S.D. Ohio 2001)...........................................8

*Lee v. Department of Justice*, 401 F. Supp. 2d 123 (D.D.C. 2005) ...............................................18

*Lee v. Department of Justice*, 413 F.3d 53 (D.C. Cir. 2005) .........................................................13

*Maughan v. NL Industries*, 524 F. Supp. 93 (D.D.C. 1981) .........................................................12

*NLRB v. Mortensen*, 701 F. Supp. 244 (D.D.C. 1988) .................................................................13

*Neal v. Harvey*, 173 F.R.D. 231 (N.D. Ill. 1997)...........................................................................14

*New York Times Co. v. Gonzales*, 382 F. Supp. 2d 457 (S.D.N.Y. 2005) ..............................17, 18

*New York Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006)...................................................17

*Nixon v. United States*, 418 U.S. 683 (1974) ...............................................................2, 6, 7, 8, 10

*Parsons v. Watson*, 778 F. Supp. 214 (D. Del. 1991) ...................................................................15

*Penland v. Long*, 922 F. Supp. 1080 (W.D.N.C. 1995)..................................................................14

*Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979) .......................................................14, 17, 19

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ...............................................................................14

*Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977) ...................................................14

*Tavoulareas v. Piro*, 93 F.R.D. 35 (D.D.C. 1981)..........................................................................12

*United States v. Ahn*, 231 F.3d 26 (D.C. Cir. 2000) ...........................................................13, 16 18

*United States v. Arditti*, 955 F.2d 331 (5th Cir. 1992).....................................................................8

*United States v. Blanton*, 534 F. Supp. 295 (S.D. Fla. 1982) ......................................................15

*United States v. Burke*, 700 F.2d 70 (2d Cir. 1983).................................................................16, 18

*United States v. Caporale*, 806 F.2d 1487 (11th Cir. 1986) .........................................................16

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995) ..........................................................7

*United States v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980)...................................................14, 16

*United States v. Dixon*, 486 F. Supp. 2d 40 (D.D.C. 2007) ...........................................................7

FILED UNDER SEAL

*United States v. Eden*, 659 F.2d 1376 (9th Cir. 1981) ................................................................7, 10

*United States v. Ferguson*, No. 3:06-CR-137, 2007 WL. 2815068
    (D. Conn. Sept. 26, 2007) ................................................................7

*United States v. Gonzalez-Acosta*, 989 F.2d 384 (10th Cir. 1993) ................................................10

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) ................................................6, 7, 8, 10

*United States v. Hardy*, 224 F.3d 752 (8th Cir. 2000) ................................................................8

*United States v. Hubbard*, 493 F. Supp. 202 (D.D.C. 1979) ................................................16

*United States v. Hughes*, 895 F.2d 1135 (6th Cir. 1990) ................................................10

*United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988)................................14, 16

*United States v. Libby*, 432 F. Supp. 2d 26 (D.D.C. 2006)................................................6, 7, 16

*United States v. Montgomery County Crisis Center*, 676 F. Supp. 98 (D. Md. 1987) ................11

*United States v. Poindexter*, 727 F. Supp. 1501 (D.D.C. 1989) ................................7, 10, 11

*United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006) ................................................8, 9

*Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981) ................................................13, 18, 19, 20

## FEDERAL STATUTES

Fed. R. Crim. P. 17(c) ................................................................2 6, 7, 8, 10, 11

## STATE STATUTES

D.C. Code §§ 16-4702 ................................................................17

D.C. Code § 16-4703 ................................................................17, 19

N.Y. Civ. Rights Law § 79-h ................................................................17, 19

**FILED UNDER SEAL**

## <u>INTRODUCTION</u>

The subpoena at issue in this motion to quash arises from Defendant Deborah Jeane Palfrey's quest to identify and publicly expose the names of individuals who patronized the escort service—Pamela Martin & Associates—that she is alleged to have run as a prostitution ring.  Ms. Palfrey unconditionally provided American Broadcasting Companies Inc., d/b/a ABC News (hereafter "ABC News") with a copy of the phone records from that escort service, which ABC News then analyzed as part of its newgathering and reporting process.  ABC News ultimately reported the names of only *two* of Ms. Palfrey's patrons (both of whom had previously been identified in published reports), determining in accordance with its own editorial and journalistic standards that any additional names it was able to identify were not newsworthy.

In the aftermath of ABC News's editorial decision, Ms. Palfrey and her counsel publicly castigated ABC News, calling into question the reasons for its decision, and suggesting that if ABC News would not publish more names then Ms. Palfrey would find assistance from some other news organization with "decidedly different professional standards."  Ex. 2 (May 6, 2007 letter from M.B. Sibley to Attorney General Alberto Gonzales).  No other news organizations have published additional names.  Since July of this year, Ms. Palfrey has posted the phone records on a website she maintains, and her counsel has stated that her supporters have been able to identify at least a dozen of her former patrons from the public posting.  Ex. 3 (July 19, 2007 article from TheHill.com).

Although the phone records are fully available to her and she could readily perform her own analysis of them (as her supporters apparently have done), Ms. Palfrey instead wants to use the judicial process to stake claim to the fruits of ABC's journalistic efforts and improperly invade its editorial decisionmaking process, all in a quest for records that are clearly

FILED UNDER SEAL

inadmissible.  This is more than the Federal Rules and the law will allow.  The subpoena issued

by Ms. Palfrey to ABC News is improper, and it should be quashed on several grounds.[1]

Federal Rule of Criminal Procedure 17(c) does not permit the issuance of a

subpoena to obtain documents that are not in and of themselves admissible as evidence, or to

obtain information that the Defendant could discover independently through the exercise of due

diligence.  *See Nixon v. United States*, 418 U.S. 683, 699-700 (1974).  The subpoena fails both of

those tests.  Any document created by ABC News that identifies one of Ms. Palfrey's former

clients would be inadmissible as hearsay.  While such a document might *lead* Ms. Palfrey to

admissible evidence, that is precisely the sort of discovery Rule 17(c) is designed to prohibit.

Moreover, even if the subpoena did not have that defect, Ms. Palfrey retains possession of the

phone records analyzed by ABC News (indeed, she has posted copies of those records on her

website), and she is free to analyze them herself.  For either or both of these reasons, the

subpoena must be quashed.

Additionally, the subpoena should be quashed on the ground that it imposes an

unreasonable burden on ABC News's exercise of editorial control over its broadcasts.  In his

seminal concurring opinion in *Branzburg v. Hayes*, Justice Powell cautioned that the First

Amendment would not tolerate for "state and federal authorities . . . to 'annex' the news media as

'an investigative arm of government.'"  408 U.S. 665, 709 (1972) (Powell, J., concurring). It is

no less burdensome for the press to be perceived as  an investigative arm of a criminal defendant

such as Ms. Palfrey, who has no right to coerce ABC News to do her legwork.

---

[1] The subpoena was issued to ABC News pursuant to a Sealed Order of this Court dated
November 13, 2007.  *See* Ex. 1.  As explained in the Motion to Seal accompanying this filing,
ABC News is filing this motion to quash under seal so as to preserve the confidentiality of the
Court's Order.  Nevertheless, it respectfully submits that Ms. Palfrey's subpoena, this motion,
and any ensuing ruling are all matters of public interest that should not be sealed.  Accordingly,
ABC News requests that the matter be unsealed at the earliest possible moment.

FILED UNDER SEAL

Finally, while this Court need not address the question if it quashes the subpoena on one of the foregoing grounds, the records Ms. Palfrey is seeking are protected by the reporter's privilege under the First Amendment and federal common law.  Because Ms. Palfrey cannot overcome ABC News's privilege, her subpoena must be quashed on that basis as well.

## BACKGROUND

On March 1, 2007, the United States charged Ms. Palfrey in a five count indictment with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), interstate travel in support of the same, and conspiracy to commit money laundering.  *See United States v. Palfrey*, No. 1:07-cr-00046-JR-1 (D.D.C.) [Dkt. No. 1].  The charges arise out of Ms. Palfrey's operation of an escort service that the government alleges was a prostitution ring.

On March 15, Ms. Palfrey's civil attorney, Montgomery Blair Sibley, provided ABC News with copies of a subset of the phone records from the Pamela Martin & Associates escort service.  ABC News did not pay for those records, and it made no promises to Mr. Sibley or Ms. Palfrey about what it would do with the records once they were obtained.  As Ms. Palfrey explained in a press release soon after:

> [T]he decision ultimately was made to hand over the records to a responsible media outlet, in this case ABC News, in New York – *without compensation and/or promises/guarantees of any sort*. . . . ABC News is under no obligation whatsoever to me. . . .

Ex. 4 (press release dated April 30, 2007) (emphasis added).

The day after ABC News received the phone records, this Court granted an *ex parte* application "restraining Defendant and her agents from taking action affecting the availability of any assets not seized by the Government."  *See* Order, *Palfrey*, No. 1:07-cr-00046-JR-1 (Mar. 16, 2007) [Dkt. No. 12].  That restraining order was specifically designed to prevent the dissemination of Ms. Palfrey's phone records, which, as this Court noted, "Defendant has

**FILED UNDER SEAL**

openly informed the public . . . that she intends to sell or transfer." *Id.* at 5. "[T]he Government

is particularly concerned about any action Defendant may take vis-à-vis that list." *Id.* Because

ABC News obtained the list just prior to this Court's ruling on the *ex parte* application, it was,

for a time, the only news organization with access to the phone records.

ABC News began to analyze the records in preparation for a May 4, 2007 episode

of the ABC News program "20/20" that would also feature an interview Ms. Palfrey gave to

Brian Ross, ABC News's Chief Investigative Correspondent.  The fact of the impending

broadcast was well-known, prompting widespread speculation about whether ABC News would

identify Ms. Palfrey's former clients and, if so, who would be found to be among them.  Ms.

Palfrey did nothing to discourage that speculation with a filing in this Court promising that the

"tentacles of this matter reach far, wide and high into the echelons of power in the United

States."  Mot. to Appoint Counsel, *Palfrey*, No. 1:07-cr-00046-JR-1 (Mar. 29, 2007) [Dkt.

No. 21].

After analyzing the records and ascertaining the identity of certain individuals

whose phone numbers were reflected therein, ABC News made an editorial decision that most of

the names were not newsworthy and that it would not participate in their publication.  As a

result, the May 4 episode of "20/20" referred to only two of Ms. Palfrey's clients by name—one,

a defense analyst Ms. Palfrey had previously named as a client in a court filing;[2] the other, a

State Department official who resigned his position and publicly identified himself as one of

Ms. Palfrey's clients the week before the "20/20" broadcast.  *See* Ex. 5 at 3-4 (Tr. of ABC

News's "20/20" dated May 4, 2007).  ABC News otherwise referred only to general categories

of individuals found within the records, adding that it did not believe their further identification

to be newsworthy.  *Id.* at 4.

---

[2]      *See* Mot. to Reconsider, *Palfrey*, No. 1:07-cr-00046-JR-1 (April 12, 2007) [Dkt. No. 28].

FILED UNDER SEAL

Mr. Sibley did not wait long to make known his displeasure with ABC News's editorial decision.  In a letter dated May 6, 2007 and addressed to the Attorney General of the United States, Mr. Sibley insisted that the government "demand that Brian Ross identify" Department of Justice officials listed in the phone records, and he threatened that unless the United States entered into settlement negotiations, Ms. Palfrey would distribute the phone records to "journalists and internet bloggers who . .  have decidedly different professional standards than that of ABC News."  *See* Ex. 2 (emphases added).[3]

On July 5, 2007, this Court vacated its Orders restraining Ms. Palfrey and her counsel from further disseminating the phone records.  *See* Order, *Palfrey*, No. 1:07-cr-00046-JR-1 (July 5, 2007) [Dkt. No. 74].  Noting that those phone records had "generated much controversy and speculation," *id.* at 1, the Court made it clear that Ms. Palfrey was free to do as she pleased with the records.  Within days, Ms. Palfrey made the phone records publicly available on the internet, where they remain available for download today.[4]  She did so in part so that her supporters and other interested parties could use the records to identify Ms. Palfrey's former clients, and to pressure others into coming forward.  The release prompted at least one person, a United States Senator, to come forward to acknowledge that his phone number was among those contained in Ms. Palfrey's records.

---

[3]    On May 9 a copy of Mr. Sibley's letter was provided to this Court by the Government as a supplement to its earlier *ex parte* application for a restraining order.  This Court interpreted Mr. Sibley's letter as a threat to violate the prior restraining order, and it issued a new Order further clarifying that "Defendant and her agents and attorneys, including her civil counsel, Montgomery Blair Sibley, shall not release, further distribute, or otherwise provide to any person or organization the phone records of Pamela Martin & Associates and/or the phone records of Deborah Jeane Palfrey."  Order, *Palfrey*, No. 1:07-cr-00046-JR-1 (May 10, 2007) [Dkt. No. 41].

[4]    *See* http://www.deborahjeanepalfrey.com/telephoneRecords.html (visited Dec. 13, 2007).

**FILED UNDER SEAL**

Some of Ms. Palfrey's supporters also established a searchable database that is likewise accessible through the internet and allows any person who so desires to search for whether a particular person's phone number is listed in Ms. Palfrey's records.[5] By mid-July, according to Mr. Sibley, that search engine had already provided Ms. Palfrey with the names of more than a dozen potential witnesses. *See* Ex. 3 (July 19, 2007 article from TheHill.com).

## ARGUMENT

The subpoena to ABC News should be quashed for any of three independent reasons: (1) it seeks documents that are not properly obtainable under Federal Rule of Criminal Procedure 17(c); (2) it imposes an undue burden on ABC News; and (3) it seeks documents that are privileged under the First Amendment and federal common law.

## I.    THE SUBPOENA SEEKS RECORDS NOT OBTAINABLE UNDER RULE 17(C).

Rule 17(c) "governs the issuance of subpoenas duces tecum in federal criminal proceedings." *Nixon*, 418 U.S. at 697-98. The rule is not a discovery device. Rather, it is only a means for expediting criminal trials through the timely organization of admissible evidence:

> It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. Rule 17 provided for the usual subpoena ad testificandum and duces tecum, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena duces tecum to be produced at a specified time and place for inspection by the defendant. Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.

*Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). As a result, a subpoena issued in a criminal case may only be enforced upon a three-part showing that it calls for the production of records that are (1) relevant to the case; (2) admissible as evidence; and (3) identified with

---

[5]    *See* http://dcphonelist.com (visited Dec. 13, 2007).

**FILED UNDER SEAL**

specificity in the subpoena. *Nixon*, 418 U.S. at 700. "A subpoena that fails to satisfy these three requirements will be deemed unreasonable or oppressive and must be either quashed or modified." *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006).

Additionally, a defendant may not enforce a subpoena without showing that the documents it seeks to compel "are not otherwise procurable reasonably in advance of trial by exercise of due diligence." *Nixon*, 418 U.S. at 699; *United States v. Haldeman*, 559 F.2d 31, 76 (D.C. Cir. 1976) (same); *United States v. Poindexter*, 727 F.Supp. 1501, 1509 (D.D.C. 1989) (same). Where the requesting party cannot make such a showing, the subpoena will be quashed. *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (affirming order quashing subpoena).

The burden of proof on each of these issues resides with Ms. Palfrey, *not* ABC News. *See Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 386 (2004); *United States v. Dixon*, 486 F.Supp.2d 40, 43 (D.D.C. 2007). Ms. Palfrey cannot meet her burden here, and as a result, the subpoena to ABC News must be quashed.

### A. The Subpoena Impermissibly Seeks Records That Would Not Be Admissible as Evidence at Trial.

"Criminal Rule 17(c), which is not a discovery device, confines a subpoena duces tecum to admissible evidence." *Haldeman*, 559 F.2d at 75; *see also Bowman Dairy*, 341 U.S. at 221 (documents must be "admissible as evidence"); *Nixon*, 418 U.S. at 700 (defendant must establish the "admissibility" of the requested materials).

This standard is not satisfied by a subpoena that merely seeks documents that might *lead* to admissible evidence—the classic formulation of discovery allowable in civil cases. Rather, if the document is not admissible on its own as evidence, it is not subject to subpoena under Rule 17(c). *See, e.g., United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) ("The weight of authority holds that in order to be procurable by means of a Rule 17(c)

subpoena, materials must themselves be admissible evidence.") (collecting cases).  "In this

respect, Rule 17(c) can be contrasted with the civil rules which permit the issuance of subpoenas

to seek production of documents or other materials which, although not themselves admissible,

could lead to admissible evidence."  *Id.* at 553; *accord, United States v. Libby*, 432 F. Supp. 2d at

30 (quoting same); *United States v. Ferguson*, No. 3:06-CR-137, 2007 WL 2815068, at \*2

(D. Conn. Sept. 26, 2007) (holding that Rule 17(c) is not satisfied where "subpoenas could

possibly uncover additional defense witnesses or evidence that could, in turn, lead to exculpatory

evidence").[6]

      Ms. Palfrey cannot meet her burden of proving that the records she seeks from

ABC News are admissible evidence.  ABC News is not a first-hand witness to any material fact

in this case.  Its knowledge is based entirely upon an analysis of the telephone records provided

by Ms. Palfrey long after-the-fact and other newsgathering it conducted.  Any documents ABC

News has prepared containing the identities of individuals who telephoned Ms. Palfrey's escort

service would be nothing more than inadmissible hearsay.  *Cf. Atkins v. Fischer*, 232 F.R.D. 116,

132 (D.D.C. 2005) ("[N]ewspaper articles constitute inadmissible hearsay, and cannot be

admitted into evidence to support the truth of the matter asserted."); *Kallstrom v. City of

Columbus*, 165 F. Supp. 2d 686, 692-93 (S.D. Ohio 2001) (statements contained in a broadcast

transcript of ABC News's "20/20" were inadmissible hearsay).  While it is conceivable that ABC

News's conclusions could lead Ms. Palfrey to find witnesses with first-hand knowledge, she has

---

[6]    *See also United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992) (holding that
subpoena was improper under Rule 17 where the defendant "was attempting to use the subpoena
to gain knowledge that he could not obtain under rule 16(a)(1), as much as to obtain evidence,
*i.e.*, that he was trying to use the subpoena *duces tecum* as a discovery device, which it is not."
(internal quotations omitted)); *United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000) (same).

FILED UNDER SEAL

no right to use a rule 17(c) subpoena to engage in that kind of discovery.  *See Nixon*, 418 U.S. at

700; *Haldeman*, 559 F.2d at 75.

        A similar question was recently addressed in *United States v. Reyes*, 239 F.R.D.

591 (N.D. Cal. 2006).  In *Reyes*, the defendant was a corporate executive facing trial for his

alleged role in the backdating of stock options.  *Id.* at 595.  He sought and received permission to

serve Rule 17(c) subpoenas on two law firms who had conducted internal investigations into the

matter.  *Id.* at 596.  On the law firms' motions to quash, the district court held that the subpoena

impermissibly sought records that were inadmissible hearsay:

> Reyes' stumbling block, however, is admissibility.  Reyes
> vehemently contends that these documents will exonerate him by
> showing his lack of culpability in the alleged backdating. . . .
> Even assuming that the subpoenaed materials say what Reyes
> thinks they do, an assertion the law firms dispute, these materials
> still would not be admissible.  The first set of materials—that is,
> the "summaries, notes and memoranda related to the interviews of
> [the corporation's] employees"—includes only hearsay. . . .  So too
> are the other categories of documents inadmissible:  the second-
> hand reflections, findings, and conclusions of investigating
> attorneys would not themselves become evidence at trial to prove
> the truth of the matters they assert. . . .  Simply put, Reyes has
> proffered no persuasive reason why the written records generated
> by [the two law firms] would be admissible in and of themselves.

*Id.* at 600.  The Court likewise addressed—and rejected—the defendant's argument that the

subpoena was proper because it might ultimately lead to other, admissible evidence:

> Next, Reyes contends that the subpoenaed materials are necessary
> for his defense team to "reverse engineer" [the corporation's]
> restatements, an "extensive and time-consuming" process.  This is
> an argument about convenience, not admissibility.  A document
> does not become admissible simply because it is helpful. . . .  It is
> true, as Reyes argues, that a court must examine the burden on a
> defendant of independently procuring the subpoenaed materials.
> But even a heavy burden does not obviate the requirements of
> relevancy, specificity, and admissibility. . . .  Because Reyes
> cannot demonstrate that the items he seeks are themselves
> admissible, the putatively heavy burden he faces in obtaining the
> information contained in them does not save his subpoenas.

**FILED UNDER SEAL**

*Id.* at 600-01.

For the same reasons, the subpoena to ABC News is improper.  At most, ABC News's identification of Ms. Palfrey's former clients would make it easier for her to identify potential witnesses in the case—witnesses whose ultimate testimony could just as reasonably be expected to be inculpatory as exculpatory.  But even assuming that it would benefit Ms. Palfrey to obtain those identities from ABC News, that fact alone is not a sufficient basis for her to issue a subpoena under Rule 17(c) because the documents ABC News has in its possession are inadmissible in their own right.  For this first reason, the subpoena must be quashed.

**B.     The Subpoena Improperly Seeks Information That Ms. Palfrey Could Obtain On Her Own Through the Exercise of Due Diligence.**

"[A]s a general matter, Rule 17(c) requires a party seeking a subpoena to demonstrate that the materials 'are not otherwise procurable[.]'"  *Poindexter*, 727 F.Supp. at 1509 (quoting *Nixon*, 418 U.S. at 699); *Haldeman*, 559 F.2d at 76 (same).  If the information sought by a subpoena could be obtained through the "exercise of due diligence," the subpoena is improper and must be quashed.  *See Nixon*, 418 U.S. at 699; *see also Eden*, 659 F.2d at 1381 ("[T]he proponent must also demonstrate that the subpoenaed materials are not available from any other source. . . ."); *United States v. Gonzalez-Acosta*, 989 F.2d 384, 389 (10th Cir. 1993) (same); *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990).

Ms. Palfrey cannot establish the unavailability of the information she wishes to obtain from ABC News.  She retains the original copies of all the phone records analyzed by ABC News, and is free to analyze them herself.  Indeed, Ms. Palfrey has scanned those records into electronic files and made them available for free downloading on the internet, in part so that her supporters can help identify the former clients of her escort service.  Her counsel claimed in

**FILED UNDER SEAL**

July, shortly after the records were first made available, that a dozen witnesses had already been identified in that manner.  *See* Ex. 3.

Ms. Palfrey has known for at least seven months—since the May 4, 2007 episode of "20/20"—that ABC News had no intention of providing her with the names of anyone it had identified from her phone records.  Whether or not she has been diligent to this point, Ms. Palfrey still has more than two months until the February 19, 2008 trial date in which to analyze the records for herself or with the assistance of others.  Because there is nothing unique about ABC News's ability to analyze Ms. Palfrey's phone records, she cannot show that the subpoena seeks information that would be unavailable to her through the exercise of due diligence, and her subpoena must be quashed.

## II.    THE SUBPOENA IS UNREASONABLY BURDENSOME.

Even if Ms. Palfrey could satisfy the *Nixon* standards for enforcement of a subpoena under Rule 17(c), the subpoena should still be quashed on the basis that "compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c).  As explained in Section III, *infra*, the records Ms. Palfrey is seeking are protected by ABC News's First Amendment privilege.  This court need not reach that question, however, to recognize the substantial burdens imposed upon news organizations when they are subjected to third-party discovery into materials they created in the course of gathering and reporting the news.

This court and others have recognized that even in the absence of a finding that documents are protected by a constitutional privilege, courts analyzing the propriety of a subpoena under Rule 17(c) should take into account the burdens that subpoena imposes upon the Constitutional rights of the party forced to comply with it.  *See Poindexter*, 727 F. Supp. at 1505 n.8 (recognizing the "heightened scrutiny of subpoenas that implicate constitutional concerns"); *see also In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1300 (4th Cir.

FILED UNDER SEAL

1987) ("Even when the first amendment and fourth amendment problems raised by subpoenas *duces tecum* do not, in and of themselves, rise to the level of constitutional violations, the concerns that underlie those constitutional provisions must enter into the balancing of interests that is required by a motion to quash under Fed. R. Crim. P. 17(c)."); *United States v. Montgomery County Crisis Ctr.*, 676 F. Supp. 98, 99 (D. Md. 1987).

Compliance with Ms. Palfrey's subpoena would unreasonably infringe upon ABC News's First Amendment rights. Following Justice Powell's admonishment in *Branzburg v. Hayes* that the First Amendment would not tolerate for the news media to be "annex[ed]" as "an investigative arm of government," 408 U.S. at 709 (Powell, J., concurring) (quotations omitted), numerous courts have recognized that compliance with third-party subpoenas often intrudes upon the editorial control exercised by news organizations. Thus, even in circumstances where no confidential sources are at issue, courts have recognized that subpoenas to reporters "represent a substantial intrusion on fact gathering and editorial privacy which are significant aspects of a free press." *In re Consumer's Union*, 495 F. Supp. 582, 586 (S.D.N.Y. 1980). "[P]ermitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35 (2d Cir. 1999); *see also Tavoulareas v. Piro,* 93 F.R.D. 35, 41 (D.D.C. 1981) ("agree [ing] . . . that the first amendment extends a degree of protection to journalists subject to discovery demands that impinge upon editorial and newsgathering activities."); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 395, 406 (E.D. Mich. 2003) (same) (quashing subpoena on ground that it burdened First Amendment rights, even in the absence of a formal privilege).

Indeed, "[t]he right of a newspaper to determine for itself what it is to publish and how it is to fulfill its mandate of dissemination must be given great respect." *Maughan v. NL Indus.*, 524 F.Supp. 93, 95 (D.D.C. 1981). As this Court explained in *Tavoulareas*:

> In balancing a litigant's right to compel discovery against a newsman's assertion that discovery will intrude upon protected first amendment rights [specifically, editorial and news gathering activities], a court must not only weigh the litigant's need for discovery, but also must carefully consider the seriousness of the intrusion on the editorial and news gathering processes. Obviously, the more fundamental the impact upon the first amendment rights of the press, the greater the need for discovery must be before a court will order an intrusion.

*Tavoulareas*, 93 F.R.D. at 41 (citations omitted).

Here, an intrusion upon ABC News's editorial judgment is the very *purpose* of Ms. Palfrey's subpoena. She and her counsel were outraged that ABC News would decide not to broadcast the names of her former clients. A different news organization might have made a different judgment—although, it is worth noting, none has done so despite Ms. Palfrey's making her phone records freely available on the internet—but it was well within ABC News's rights to make editorial decisions consistent with the standards by which it operates. Ms. Palfrey is now attempting to override that decision, and in effect to coerce the release of the story that ABC News chose not to broadcast. That is not a valid use of a Rule 17(c) subpoena, and the burden it imposes upon ABC News should not be tolerated.

## III. THE SUBPOENA SEEKS MATERIALS PRIVILEGED UNDER THE FIRST AMENDMENT AND FEDERAL COMMON LAW.

The First Amendment and federal common law provide a qualified privilege that broadly protects journalists' newsgathering activities. This privilege requires a party seeking discovery of those activities to satisfy a stringent test: he must show by clear and convincing evidence that (i) the information sought is of central significance to his case; (ii) it cannot be

**FILED UNDER SEAL**

obtained from any other source through due diligence; <u>and</u> (iii) there is an overriding public

interest in its disclosure.  Ms. Palfrey's subpoena seeks information squarely protected by the

First Amendment privilege, and she cannot make the showing required to overcome it.

### A.    News Reporters Enjoy a First Amendment Qualified Privilege for News Gathering Activities.

It is well-established that the First Amendment gives rise to a qualified privilege

protecting reporters from being compelled to testify concerning their newsgathering activities.

*See, e.g., Lee v. Dep't of Justice*, 413 F.3d 53, 59 (D.C. Cir. 2005); *United States v. Ahn*, 231

F.3d 26, 37 (D.C. Cir. 2000); *Clyburn v. News World Communs., Inc.*, 903 F.2d 29, 35 (D.C. Cir.

1990); *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981); *Hutira v. Islamic Republic of Iran*, 211 F.

Supp.2d 115 (D.D.C. 2002); *Alexander v. FBI*, 186 F.R.D. 21, 48 (D.D.C. 1998); *NLRB v.*

*Mortensen*, 701 F. Supp. 244 (D.D.C. 1988); *see also Gonzales v. Nat'l Broadcasting Co.*, 194

F.3d 29 (2d Cir. 1999); *Shoen v. Shoen*, 5 F.3d 1289, 1295 (9th Cir. 1993) (recognizing qualified

privilege and collecting cases); *United States v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980); *Riley*

*v. City of Chester*, 612 F.2d 708 (3d Cir. 1979); *Silkwood v. Kerr-McGee Corp.* 563 F.2d 433

(10th Cir. 1977); *Baker v. F & F Inv.*, 470 F.2d 778 (2d Cir. 1972).

The reporter's privilege recognized by these cases provides broad protection for

the newsgathering process.  It shields not only the identity of sources, but also *information*

acquired by a reporter—regardless of whether the information or the source is confidential.  *See*,

*e.g.*, *Gonzales*, 194 F.3d at 35 (upholding the privilege's application to non-confidential

information and recognizing that the concerns that underlie the privilege for confidential sources

"are relevant regardless whether the information sought from the press is confidential"); *Shoen*, 5

F.3d at 1294 ("the privilege protects a journalist's resource materials regardless of whether these

materials contain confidential information"); *United States v. LaRouche Campaign*, 841 F.2d

FILED UNDER SEAL

1176, 1182 (1st Cir. 1988) (holding that non-confidential information falls within the privilege

and noting the "lurking and subtle threat" to the strength of a free press if disclosure of

nonconfidential information "becomes routine and casually, if not cavalierly compelled");

*Cuthbertson*, 630 F.2d at 147 ("We do not think that the privilege can be limited solely to the

protection of sources.  The compelled production of a reporter's resource materials can constitute

a significant intrusion into the newsgathering and editorial processes"); *Penland v. Long*, 922 F.

Supp. 1080 (W.D.N.C. 1995) ("journalists' qualified privilege under the First Amendment

encompasses nonconfidential information from nonconfidential sources").   Courts protect non-

confidential information under the First Amendment because "the policy which underlies the

existence of journalistic privilege would be equally undermined by compelling reporters to

reveal factual information surrounding investigations, as well as the content of their

communications with the sources."  *Neal v. Harvey*, 173 F.R.D. 231, 234 (N.D. Ill. 1997).

        These principles were applied by this Court in *Hutira v. Islamic Republic of Iran*,

211 F. Supp.2d 115 (D.D.C. 2002).  There, the Court quashed a subpoena in a civil case in which

the plaintiff sought testimony from a Washington Post reporter to confirm the accuracy of certain

statements and quotations published in an article. *Id.* at 117.  After reaffirming that the reporter's

privilege does apply to published information, the Court quashed the subpoena because the

plaintiff had failed to exhaust alternative sources of the information she sought from the reporter.

*Id.* at 122; *see also Parsons v. Watson*, 778 F. Supp. 214, 219 (D. Del. 1991) (quashing subpoena

to reporter where party subpoenaed reporter to confirm the accuracy of statements made in his

article); *United States v. Blanton*, 534 F. Supp. 295, 297 (S.D. Fla. 1982) (quashing subpoena

where the government sought a reporter's testimony for the sole purpose of verifying certain

quotations and statements and recognizing that "[a]lthough no confidential source of information

is involved, this distinction is irrelevant to the chilling effect enforcement of the subpoena would

**FILED UNDER SEAL**

have on the flow of information to the press and public").  "In reaching this conclusion," the

*Hutira* Court noted, it was "well aware that the plaintiff may have considerable difficulty

obtaining the information" sought.  *Id.*  The Court's reasoning was straightforward:

> Regardless of whether they seek confidential or nonconfidential
> sources, or whether they seek disclosure or verification of
> statements, the [party seeking disclosure] is attempting to examine
> the reportorial and editorial processes.  The fact that their purpose
> is to support, rather than undermine, the bona fides of the
> statements as expressed by the reporters makes no difference.
> Such discovery necessarily implicates the First Amendment
> interests of the journalists.

*Id.* at 121 (internal quotation omitted).

Those principles are no less applicable to a criminal subpoena such as the one

issued by Ms. Palfrey.  Although reporters may have fewer protections when responding to grand

jury subpoenas, *see, e.g.*, *In re Grand Jury Subpoena (Judy Miller)*, 397 F.3d 964 (D.C. Cir.

2005) ("*Miller*"), the D.C. Circuit is one of several courts of appeal to have recognized the

existence of the reporter's privilege in the context of criminal defendants' subpoenas issued

under Rule 17(c).  *See Ahn*, 231 F.3d at 37 (affirming order quashing trial subpoena where a

criminal defendant "had not demonstrated that the reporters' qualified privilege should be

overcome"); *see also United States v. Burke,* 700 F.2d  70, 77 (2d Cir. 1983) ("We see no

legally-principled reason for drawing a distinction between civil and criminal cases when

considering whether the reporter's interest in confidentiality should yield to the moving party's

need for probative evidence."); *Cuthbertson*, 630 F.2d at 147 (3d Cir.) ("[J]ournalists possess a

qualified privilege . . . not to disclose unpublished information in their possession in criminal

cases."); *LaRouche Campaign*, 841 F.2d at 1182 (1st Cir.) (applying privilege in criminal case);

*United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) (same); *United States v.*

*Hubbard*, 493 F. Supp. 202, 205 (D.D.C. 1979) ("[T]he reporter is protected from the subpoena

power of a criminal defendant unless the information is necessary to a fair hearing and there are no alternative avenues for access to the information in the reporter's possession.").[7] "Indeed, the important social interests in the free flow of information that are protected by the reporter's qualified privilege are particularly compelling in criminal cases." *Burke*, 700 F.2d at 77.

### B.    Comparable Protections Exist Under Federal Common Law.

In addition to the privileges afforded to ABC News by the First Amendment, a reporter's privilege exists under the federal common law. *See Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979) (recognizing common law reporter's privilege under Rule 501 of the Federal Rules of Evidence); *New York Times Co. v. Gonzales*, 382 F.Supp.2d 457 (S.D.N.Y. 2005) (same).[8] Rule 501 "direct[s] federal courts to continue the evolutionary development of testimonial privileges," *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996), and it authorizes courts to "define new privileges" when "reason and experience" warrant, *id.* at 8.

As the Southern District of New York concluded in *New York Times Co.*, the fact that the reporter's privilege is recognized by forty-nine states and the District of Columbia is ample ground under *Jaffee* for recognition of a similar privilege in federal court. *See New York Times Co.* 382 F. Supp.2d at 502 (citing state statutes and decisions establishing reporter's

---

[7]    In *Libby*, this court held that "the First Amendment does not protect a news reporter, or that reporter's news organization, from producing documents pursuant to a Rule 17(c) subpoena in a criminal prosecution *when the news reporter is personally involved in the activity that forms the predicate for the criminal offenses charged in the indictment*." 432 F. Supp. 2d at 44 (emphasis added). That holding is inapplicable here, as ABC News was not involved in any of the underlying events, but instead obtained information after-the-fact in the course of reporting on Ms. Palfrey's indictment.

[8]    The Southern District of New York's opinion in *New York Times Co.* was reversed by the Second Circuit on the ground that any common law privilege found to exist would have been overcome on the facts before the Court—namely, a grand jury investigation into the identity of federal agents whose anonymous tips to reporters endangered agents executing a search warrant. *See New York Times Co. v. Gonzales*, 459 F.3d 160, 162 (2d Cir. 2006). The Court expressly left open the question whether a privilege would lie on a different set of facts. *Id.* at 169.

**FILED UNDER SEAL**

privilege); *see also Jaffee*, 518 U.S. at 13 (adopting psycho-therapist patient privilege that was already recognized by most state courts, and reasoning that the absence of a federal common law privilege serves only to "frustrate the purposes of the state legislation that was enacted to foster these confidential communications."). Indeed, both the laws of the District of Columbia (wherein Ms. Palfrey's trial is taking place) and New York (wherein ABC News prepared its reports on Ms. Palfrey) expressly protect the unpublished information sought by this subpoena. *See* D.C. Code §§ 16-4702(2) & 4703(a) (protecting journalists' "notes" and "outtakes"); N.Y. Civ. Rights Law § 79-h (protecting "any unpublished news obtained or prepared by a journalist or newscaster in the course of gathering or obtaining news"); *see also New York Times Co.* 382 F. Supp.2d at 502 (citing additional statutes). Under *Jaffee*, the existence of those state-level protections strongly supports a finding of comparable protections under Rule 501 and the federal common law. *See* 518 U.S. at 13.[9]

**C.      Ms. Palfrey Cannot Make the Required Showing To Overcome ABC News's Qualified Privilege.**

The journalist's privilege established by these cases, as well as by the D.C. and New York shield laws, can be overcome only upon a three-fold showing that the information she seeks is: "[1] highly material and relevant, [2] necessary or critical to the maintenance of [her defense], and [3] not obtainable from other available sources." *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7 (2d Cir. 1982); *see also Ahn*, 231 F.3d at 37. She can make no such showing here.

---

[9]      In two prior cases, this Court has declined to adopt a common-law reporter's privilege, reasoning that under the facts of those cases such a privilege would be duplicative of the First Amendment privilege, and therefore also unnecessary. *See Lee v. Dep't of Justice*, 401 F. Supp. 2d 123, 139 (D.D.C. 2005); *Hatfill v. Gonzales*, 505 F.Supp.2d 33, 45 (D.D.C. 2007). Although ABC News respectfully submits that there is no inconsistency between recognizing a privilege under both the Constitution and federal common law, as was done in *New York Times Co.*, it nevertheless agrees for present purposes that this Court need not address the existence of a common-law privilege if it finds that a First Amendment privilege covers the records at issue.

First, the party seeking disclosure must show that the material sought "goes to the heart of the matter" and is "crucial to his case." *Id.* at 713 (internal quotation omitted); *see also Ahn*, 231 F.3d at 37 (affirming order quashing subpoenas issued to reporters in a criminal case, because "the reporters' testimony was not 'essential and crucial' to [defendant's] case and was not relevant to determining [defendant's] guilt or innocence"); *Hutira*, 211 F. Supp.2d at 119 ("[C]ourts should consider whether the information sought is of central importance to the litigant's claim or defense") (internal quotation omitted); *Alexander*, 186 F.R.D. at 49 (information sought "must go to the very heart of the plaintiffs' claim"). It is not enough that the information may be relevant to some issue in the case; rather, the information must be so crucial that it is essential to a just resolution of the issues. *See, e.g., Burke,* 700 F.2d at 77 (the information must be "necessary" or "critical" to the defense); *Baker*, 470 F.2d at 784 (the information should be "essential"). Indeed, unless her defense "virtually rises or falls" with the subpoenaed information, the motion to quash must be granted. *In re Natural Gas Commodities Lit.*, 235 F.R.D. 241, 244 (S.D.N.Y. 2006).

Second, the party seeking disclosure must demonstrate that she has "exhausted every reasonable alternative source of information." *Zerilli*, 656 F.2d at 713; *Hutira*, 211 F. Supp. 2d at 119; *Alexander*, 186 F.R.D. at 49. "[T]he obligation is clearly very substantial." *Zerilli*, 656 F.2d at 714. Indeed, as the Third Circuit made clear in *Riley v. City of Chester*, the showing required to overcome a claim of privilege is not made by a "general assertion of necessity;" rather, "specific findings" of both the information's crucial importance and the unavailability of alternative sources must be made. 612 F.2d at 717.

The New York and D.C. shield laws provide the same protections and more. *See* N.Y. Civ. Rights Law § 79-h(c) (permitting discovery of non-published information only upon a showing that it: "(i) is highly material and relevant; (ii) is critical or necessary to the

19

**FILED UNDER SEAL**

maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not

obtainable from any alternative source."); D.C. Code § 16-4703(a) (requiring a showing that:

"(1) The news or information is relevant to a significant legal issue . . .; (2) The news or

information could not, with due diligence, be obtained by any alternative means;  and (3) *There

is an overriding public interest in the disclosure*.") (emphasis added).

      The standards embodied in these statutes are not satisfied by a mere showing of

relevance.  Rather, both require a showing that the information is of such surpassing

importance that the case "virtually rises or falls" upon the requested information.  *In re

Application to Quash Subpoena to Nat'l Broad. Co.*, 79 F.3d 346, 351 (2d Cir.1996) (quashing

subpoena for outtakes from NBC's "Dateline" on ground that they were merely "useful" to a

defendant and not "critical or necessary"); *Gray v. Hoffman-La Roche*, No. 02-136, 2002 WL

1801613 (D.D.C. Mar. 27, 2002) (holding that the D.C. shield law requires a showing that the

information sought "goes to 'the heart of the matter.'").

      Ms. Palfrey cannot make the requisite showings.  First, the names of the former

clients of her escort service are not essential to her defense.  Even if Ms. Palfrey intended to call

those clients as witnesses to demonstrate that they engaged in only legal activities with the

escorts employed by Pamela Martin & Associates, the same defense could be presented more

thoroughly and efficiently by calling the people already known to Ms. Palfrey—namely, the

escorts.  Only they could testify to the totality of activities sanctioned by Ms. Palfrey's escort

service, and Ms. Palfrey does not need ABC News's assistance to call them as witnesses.

      More importantly, Ms. Palfrey cannot meet the second element of the *Zerilli* test

by demonstrating that she has exhausted alternative sources for the information.  As discussed

above, Ms. Palfrey retains original copies of all the phone records analyzed by ABC News.  It is

within her own power to analyze those records to ascertain the identity of individuals reflected

FILED UNDER SEAL

therein. Indeed, her counsel stated within weeks of making Ms. Palfrey's records public that more than a dozen witnesses had already been identified. Ex. 3. As the courts have repeatedly stressed, subpoenas to news organizations may only be employed as a measure of last resort. Because Ms. Palfrey cannot demonstrate that she has exhausted her remaining alternative sources of information, her subpoena must be quashed.

## CONCLUSION

For the foregoing reasons, the subpoena to ABC News should be quashed.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

/s/ Kevin T. Baine
Kevin T. Baine (No. 238600)
Kevin Hardy (No. 473941)
Carl R. Metz (No. 490633)

725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Non-Party Movant*
  *American Broadcasting Companies, Inc.*

Henry S. Hoberman
ABC, INC.
77 W. 66th Street
New York, NY  10023
(212) 456-6371
(212) 456-6565 (facsimile)

*Of Counsel*

December 14, 2007

# EXHIBIT 1

*Personally served*
*12/3/07, 11:... m*

*Returned*

AO90 (Rev. 12/03) Deposition Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

~~Southern~~                    **DISTRICT OF** ~~New York~~ COLUMBIA

UNITED STATES OF AMERICA

V.

Deborah Jeane Palfrey

**DEPOSITION SUBPOENA
IN A CRIMINAL CASE**

Case Number: CR-07-046-GK

TO:

Record Custodian
ABC News
7 WEST 66th Street
New York, NY 10023

*U.S. MARSHALS SERVICE
SOUTHERN DISTRICT N.Y.
2007 NOV 26 PM 12:
RECEIVED*

☑ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE | DATE AND TIME |
|---|---|
| Law Office of Montgomery Blair Sibley<br>Counsel for Defendant<br>1629 K Street, Suite 300<br>Washington, D.C. 20006 (202-508-3699) | ~~11/15/2007~~ 10:00 am<br>12/19/2007 |

☑ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):

In lieu of appearance, please provide to defense counsel by November 15, 2007, the following information, in electronic format if possible, via overnight or express mail: All records relating to investigation of (i) Jeane Palfrey, (ii) Pamela Martin & Associates and/or ~~(iii) Escort Services from 2000 - 2007~~, including without limitation, the identification information of every client of Pamela Martin & Associates.  *Dckt*

*RECEIVED
NOV 14 A ...
MARSHALS OFF...
DISTRICT OF COLUMB...*

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| JUDGE OR CLERK OF COURT | DATE |
|---|---|
| (By) Deputy Clerk  *Tonya T. Hightower* | **NOV 13 2007** |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

Law Office of Montgomery Blair Sibley
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006 (202-508-3699)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       :
                                :
        v.                      :       Criminal No. 07-46 (GK)
                                :          SEALED
DEBORAH JEANE PALFREY,          :
                                :                **FILED**
        Defendant.              :
                                :              NOV 1 3 2007

                                        NANCY MAYER WHITTINGTON, CLERK
                                             U.S. DISTRICT COURT

                    MEMORANDUM OPINION

     This matter is before the Court on Defendant's *Ex Parte*
Application for Issuance of Subpoenas and Payment of Costs and
Fees. Upon consideration of Defendant's Motion, the applicable
case law, and the entire record herein, and for the reasons stated
below, Defendant's *Ex Parte* Application for Issuance of Subpoenas
and Payment of Costs and Fees is **granted in part** and **denied in
part**.

     The Court will issue a separate order directing the U.S.
Marshals Service to serve subpoenas *duces tecum* upon the specific
parties the Court identifies below as proper recipients for
Defendant's subpoenas. That order will also require that those
being subpoenaed produce the documents requested by **December 15,
2007** to the offices of Defendant's counsel in the District of
Columbia, rather than to the federal courthouse. The Court grants
Defendant's request to keep these subpoena applications
confidential and is therefore sealing this Opinion and its
accompanying Order. However, the subpoenas are to be served with

a copy of this Opinion and Order, so that those subpoenaed understand the context in which the applications have been granted.

### 1.   Verizon and Cellular Telephone Companies

Defendant requests that the Court issue subpoenas *duces tecum* to Verizon, AT&T Mobility, Sprint Nextel, T-Mobile USA, Verizon Wireless, and Alltel for "telephone records of customers and other escort agencies operating in the District of Columbia." That request is hereby **granted**.

### 2.   Metro-D.C. Vice Squads

Defendant also requests this Court to issue subpoenas *duces tecum* to the following police agencies for all records relating to the investigation of Jeane Palfrey and Pamela Martin & Associates, as well as all records relating to investigations of escort services in general from 2000 to 2007:

1. Metropolitan Police Department of the District of Columbia
2. Maryland State Police
3. Anne Arundel County Police Department
4. Anne Arundel County Sheriff's Office
5. Baltimore County Police Department
6. Baltimore County Sheriff's Office
7. Howard County Police Department
8. Howard County Sheriff's Department
9. Montgomery County Police Department

-2-

10.   Prince George's County Police Department[1]

11.   Baltimore Police Department

12.   Arlington County Police Department

13.   Arlington County Sheriff's Department

14.   Fairfax County Police Department

15.   Fairfax County Sheriff's Office

16.   Alexandria City Police Department

The Court grants Defendant's request that the above-listed police agencies produce all records relating to the investigation of Jeane Palfrey and Pamela Martin & Associates. As to Defendant's request that the subpoenaed police agencies produce all records relating to the investigation of escort services from 2000 to 2007, the Court finds that granting this request would be unduly burdensome to the various police agencies. Even if such evidence proved to be admissible, its probative value would be outweighed by the likelihood that it would confuse and distract the jury. Therefore, Defendant's request for the issuance of subpoenas to local police agencies is **denied in part** and **granted in part**.

---

[1]Defendant separately requests a subpoena for "Prince George's County Police Department" and "Prince George County Police Department." As the subpoenas submitted by Defendant for "Prince George's County" and "Prince George County" police departments are identical in both address and substance, the Court assumes that the inclusion of identical subpoenas was a clerical error on the part of Defendant, and therefore will issue only one subpoena to the Prince George's County Police Department.

-3-

### 3.    Federal Agencies

Defendant asks this Court to issue subpoenas to various federal agencies for all records relating to the investigation of Jeane Palfrey and Pamela Martin & Associates, as well as all records relating to investigations of escort services in general from 2000 to 2007.    The agencies for which Defendant requests subpoenas include:

1.    Federal Bureau of Investigation

2.    Department of State - Diplomatic Security Service

3.    Internal Revenue Service Criminal Investigations Division

4.    United States Postal Inspection Service

5.    Office of the Director of National Intelligence

6.    Central Intelligence Agency

7.    Defense Intelligence Agency

8.    National Security Agency

9.    Department of State - Bureau of Intelligence and Research

Defendant is entitled to records relating to the investigation of Jeane Palfrey and Pamela Martin & Associates that are in the custody of these federal agencies.    However, Defendant has failed to show  good cause sufficient for this Court to require the above-listed federal agencies to produce documents relating to investigations of escort services generally from 2000 to 2007. Therefore Defendant's request is **denied** as to that purpose.

With respect to the IRS, the Court finds that the Defendant is

-4-

entitled to all records that relate to Defendant and Pamela Martin & Associates, as well as all copies of 1099s Ms. Palfrey has filed with the IRS from 1996 to 2007.  As with Defendant's requests to the other federal agencies, however, Defendant has failed to show good cause for why she is entitled to all records in the custody of the IRS relating to escort services from 2000 to 2007.  The Court therefore **grants in part** and **denies in part** Defendant's request for a subpoena requiring production of documents by the IRS and other federal agencies.

### 4.    ABC News and Larry Flynt Productions, Inc.

The Court **grants in part** and **denies in part** Defendant's request that subpoenas be issued to ABC News and Larry Flynt Productions, Inc.[2] for the production of records relating to the investigation of Jeane Palfrey, Pamela Martin & Associates, and escort services from 2000 to 2007.  Defendant has failed to show good cause as to why she is entitled to all records in the custody of ABC News and Larry Flynt relating to the investigation of escort services from 2000 to 2007.  Therefore Defendant's request is **denied** as to that purpose.

### 5.    H&R Block

---

[2]The subpoenas submitted to the Court by Defendant's counsel for ABC News, Larry Flynt Productions, and H&R Block improperly denominated the court issuing the subpoenas.  The Court has made the appropriate correction to these subpoenas, so that all subpoenas now list the United States District Court, District of Columbia as the issuing court.

The Court **grants** Defendant's request that a subpoena be issued to H&R Block for production of records relating to the preparation of tax returns for Defendant and Pamela Martin & Associates, as well as for production of accountant work papers, notes, correspondence, and all records of communications between H&R Block and Defendant.

### 6.  Messrs. Tobias, Vitter, and Ullman

The Court also **grants** Defendant's request that a subpoena be issued to Messrs. Tobias, Vitter, and Ullman for all records relating to Defendant and/or Pamela Martin & Associates.

An Order will issue with this Memorandum Opinion.

Nov. 13, 2007

Gladys Kessler
United States District Judge

-6-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          :

            v.                     :        Criminal No. 07-46 (GK)

DEBORAH JEANE PALFREY,             :        **FILED**

            Defendant.             :        NOV 1 3 2007

                                   :        NANCY MAYER WHITTINGTON, CLERK
                                            U.S. DISTRICT COURT

                          **ORDER**

        This matter is before the Court on Defendant's *Ex Parte*
Application for Issuance of Subpoenas and Payment of Costs and
Fees.  Upon consideration of all materials submitted and relevant
precedent, the Court directs the U.S. Marshals Service to serve
Subpoenas, returnable December 15, 2007, at defense counsel's
office, upon the below-listed parties.

        **WHEREFORE** it is this __*13th*__ day of __*November*__,
2007, hereby

        **ORDERED** that Defendant's *Ex Parte* Application for Issuance of
Subpoenas and Payment of Costs and Fees is **denied in part** and
**granted in part**; it is further

        **ORDERED** that the U.S. Marshals Service effect service of
subpoenas upon the following parties:

        1.    Verizon Legal Compliance, 99 Shawan Rd., Rm. 133,
              Cockeysville, MD 21030;

        2.    AT&T Mobility, 1506 Wisconsin Ave., NW, Washington, DC
              20007-2738;

3.  Sprint, 2001 M St., NW, Washington, DC 20036;

4.  T-Mobile, 3225 14th St., NW, Washington, DC 20010;

5.  Verizon Wireless, 1331 Pennsylvania Ave., NW, Washington, DC 20004;

6.  Alltel, 601 Pennsylvania Ave., NW, Washington, DC 20004;

7.  Metropolitan Police Department of the District of Columbia, 1215 3rd St., NE, Washington, DC 20002;

8.  Maryland State Police, 108 Carroll Dr., Annapolis, MD 21403;

9.  Anne Arundel County Police Department, 80 West St., Annapolis, MD 21401;

10. Anne Arundel County Sheriff's Office, 7 Church Circle, PO Box 507, Annapolis, MD 21401;

11. Baltimore County Police Department, 700 E. Joppa Rd., Towson, MD 21286;

12. Baltimore County Sheriff's Office, Courts Bldg., 401 Bosley Ave., Towson, MD 21204;

13. Howard County Police Department, 3410 Courthouse Dr., Ellicott City, MD 21043;

14. Howard County Sheriff's Department, 8360 Court Ave., Ellicott City, MD 21043;

15. Montgomery County Police Department, 1451 Seven Locks Rd., Rockville, MD 20854;

16.  Prince George's County Police Department, 7600 Barlowe Rd., Landover, MD 20785;

17.  Baltimore Police Department, 500 East Baltimore St., Baltimore, MD 21202;

18.  Arlington County Police Department, 1425 N. Courthouse Rd., Arlington, VA 22201;

19.  Arlington County Sheriff's Department, 1425 N. Courthouse Rd., Arlington, VA 22201;

20.  Fairfax County Police Department, 4100 Chain Bridge Rd., Fairfax, VA 22030;

21.  Fairfax County Sheriff's Office, 10459 Main St., Fairfax, VA 22030;

22.  Alexandria City Police Department, 2003 Mill Rd., Alexandria, VA 22314;

23.  Internal Revenue Service, Criminal Investigations Division, 500 N. Capitol St., NW, Washington, DC 20221;

24.  FBI Washington, Washington Metropolitan Field Office, 601 4th St., NW, Washington, DC 20535-0002;

25.  Department of State, Bureau of Diplomatic Security, U.S. Department of State, Washington, DC 20522-2008;

26.  Department of State, Bureau of Intelligence and Research, 2201 C St., NW, Washington, DC 20520;

27.  United States Postal Inspection Service, 10500 Little Patuxent Pkwy., Ste. 200, Columbia, MD 21044-3509;

28. Office of the Director of National Intelligence, Washington, DC 20511;

29. Central Intelligence Agency, Washington, DC 20505;

30. Defense Intelligence Agency, 200 Macdill Blvd., Bolling Air Force Base, Washington, DC 20340;

31. National Security Agency, 9800 Savage Rd., Fort George Gl Meade, MD 20755-6000;

32. Record Custodian, ABC News, 7 West 66th St., New York, NY 10023;

33. Record Custodian, LFP, Inc., 8484 Wilshire Blvd., Ste. 900, Beverly Hills, CA 90211-3227;

34. H&R Block, Ken Nofkahr, 4003 Sonoma Blvd., Ste. 116, Vallejo, CA 94591;

35. Randaijl L. Tobias, 1111 23rd St., NW, South 3A, Washington, DC;

36. Harlan Ullman, 1245 29th St., NW, Washington, DC 20007-3352; and

37. Hon. David Vitter, 516 Hart Senate Office Bldg., Washington, DC 20510.

Nov. 13, 2007
Date

Gladys Kessler
Gladys Kessler
United States District Judge

-4-

AO90 (Rev. 12/07) Deposition Subpoena in a Criminal Case

*Served*

# UNITED STATES DISTRICT COURT

~~Southern~~ Columbia New York  **DISTRICT OF**

UNITED STATES OF AMERICA

V.

Deborah Jeane Palfrey

**DEPOSITION SUBPOENA
IN A CRIMINAL CASE**

Case Number: CR-07-046-GK

TO:
Record Custodian
ABC News
7 WEST 66th Street
New York, NY 10023

☑ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE | DATE AND TIME |
|---|---|
| Law Office of Montgomery Blair Sibley<br>Counsel for Defendant<br>1629 K Street, Suite 300<br>Washington, D.C. 20006 (202-508-3699) | ~~11/15/2007~~ 10:00 am<br>12/15/2007 |

☑ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):

In lieu of appearance, please provide to defense counsel by November 15, 2007, the following information, in electronic format if possible, via overnight or express mail: All records relating to investigation of (i) Jeane Palfrey, (ii) Pamela Martin & Associates and/or (iii) Escort Services from 2000 - 2007, including without limitation, the identification information of every agent of Pamela Martin & Associates.

RECEIVED
NOV 14 AIII
US MARSHALS OFFICE
DISTRICT OF COLUMBIA

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6)

| JUDGE OR CLERK OF COURT | DATE |
|---|---|
| (By) Deputy Clerk *Tonya I. Hightower* | NOV 13 2007 |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER

Law Office of Montgomery Blair Sibley
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006 (202-508-3699)

AO90 (Rev. 12/03) Deposition Subpoena in a Criminal Case

| PROOF OF SERVICE | | |
|---|---|---|
| RECEIVED BY SERVER | DATE | PLACE |
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | | FEES AND MILEAGE TENDERED TO WITNESS<br><br>☐ YES    ☐ NO    AMOUNT $ |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

ADDITIONAL INFORMATION

# EXHIBIT 2

# CENTER FOR FORFEITURE LAW

1629 K Street, Suite 300
Washington, D.C. 20006

| | |
|---|---|
| MONTGOMERY BLAIR SIBLEY | ADMITTED TO PRACTICE: |
| 202-508-3699 | FLORIDA |
| 202-478-0371 (E-FAX) | NEW YORK |
| SIBLEY@CIVILFORFEITURE.COM | DISTRICT OF COLUMBIA |

May 6, 2007

Via FedEx #8617-4631-8049
     and email c/o AUSAs Daniel Pearce Butler, Catherine K. Connelly, William
     Rakestraw Cowden

Alberto Gonzalez, Attorney General
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

     Re:    *Second Request for Appointment of Special Counsel*

Greetings:

     I represent Deborah Jeanne Palfrey, a/k/a the "D.C. Madam" who (i) has been indicted by your office in a matter assigned Criminal Case Number: 07-046-GK and (ii) has had all her assets seized in a civil forfeiture matter in Case No.:1:06-CV-01710-GK.

     On March 1, 2007, FedEx delivered (Tracking #8581-1680-3504) to your office my request pursuant to 28 C.F.R. §600.1 for the appointment of a Special Counsel for the above matters. In that letter I indicated that "given the broad spectrum of customers [of the escort service] it is a mathematical certainty that in time [Justice] Department employees will be identified as customers of the service and subpoenaed in either the civil matter, the criminal matter, or both." To date, I have yet to receive a response to that letter.

     In the interim, approximately 20% of the telephone records of the escort service were turned over to Brian Ross of *ABC News*. As you are doubtlessly aware, last Friday, Brian Ross, in the publically available transcript of his *20/20* report, is quoted as stating: "The phone records trace back to thousands of men, *including a career Justice Department prosecutor.*"

     Moreover, consider the math: If 20% of the telephone records produced one *"career Justice Department prosecutor"*, then 100% of the telephone records will very likely produce at least another four (4) *"career Justice Department prosecutor*s." Moreover, this discounts the possibility that if one *Akin/Gump* law firm employee was an escort for the service, it is as likely that your "law firm" has similarly situated employees who also worked as escorts for the service. Do not assume

Alberto Gonzalez, Attorney General
Office of the Attorney General
May 6, 2007
Page 2

that the records sezied from my client identified all of the women who worked for the service at one time or another.

Finally, please note that Brian Ross also reported that: "[t]here are NASA officials; at least five military officers, including the commander of an Air Force intelligence squadron" and "[t]he phone numbers also track back to Georgetown mansions and prominent CEOs, officials at the World Bank and the International Monetary Fund and **lobbyists both Republican and Democratic**."

Given that the person who ordered an escort was not necessarily the person who received the services provided by the escort, the highlighted phrase ought to make you ponder the misogynist wisdom of prosecuting my client for a victimless crime when significant **men** of power are walking on crimes of much greater significance to the Republic. Moreover, given that pre-9/11, an appreciable part of the clientele of the service were Arabs, national security interests may also be at issue: *Profumo/Ivanov »Tobias/*?

As of present, (i) *ABC News* received copies of 75% of the 2002-2006 telephone records of the escort service and (ii) confirming the recent *Boston Globe* report – a group of veteran investigative journalists associated with the *Washington Independent Writers Association* are researching the 1997-1999 telephone records of the escort service.

This limited distribution will change in seven (7) days and when it does: (i) the reporting will be much more extensive as all of the years of the escort service telephone records will be released and (ii) the "standards and practices" committees of the recipient organizations, journalists and internet bloggers who will receive these records have decidedly different professional standards than that of *ABC News*.

Thus, I must <u>insist</u> that you take the following steps:

1.  To restore public confidence in your office, demand that Brian Ross identify to you that *"career Justice Department prosecutor"* and then you publically detail, what, if any, role that individual played in the investigation and prosecution of my client; and

2.  Under 28 C.F.R. §600.1, undertake the <u>immediate</u> interview and appointment of a Special Counsel for the above matters.

My client is prepared to withhold further distribution of copies of the telephone records pending *confidential* settlement negotiations with yourself or your designee – other than the presently

Alberto Gonzalez, Attorney General
Office of the Attorney General
May 6, 2007
Page 3

assigned AUSAs who are demonstratively not trustworthy in this regard – <u>if</u> these steps are taken <u>and</u> communicated to me by May 11, 2007.

    In my mind, failure to do so will simply confirm to the world that your office wields its considerable power without thought or concern of the damaging consequences upon the public and the real public interests at issue.

Yours,

# EXHIBIT 3

# â€˜Brandeis Boysâ€™ come to D.C. Madamâ€™s rescue with website of phone listings

Contributed by Kevin Bogardus
July 19, 2007

As the phone records of the "D.C. Madam," Deborah Jeane Palfrey, became public last week, curious Washingtonians started searching a mysterious database at dcphonelist.com that had organized mountains of her documents.

In their first on-the-record phone interview, the men behind the website spoke to the Hill about who they are, how they created the database and why they put it online.

Kevin, Igor and Yoni described their experiences in a conference call. The crew's fourth member, Danny, was not present.
All asked that their last names not be printed.

Kevin said they were concerned for their respective employers.

"It also prevents people from calling us up and harassing us, or worse," he said. "The irony is not entirely lost on us."

The website's registration remains private and its purveyors are shy with the press, e-mailing an Associated Press reporter for an article on Palfrey last week.

Many have plugged individuals' phone numbers into the database in attempts to determine who utilized Palfrey's services.
Some big fish have come under fire following their outing as possible clients, such as Sen. David Vitter (R-La.) and a former Bush administration official, Randall Tobias.

The proprietor of a Washington, D.C. escort service, Palfrey has been charged by federal authorities with running a prostitution ring. She has maintained her innocence and released her phone records to find witnesses for her potential trial.

All in their mid-20s, the "D.C. Phone Listers" - as they identified themselves in their first e-mail to The Hill - are computer programmers and IT specialists who live and work in the Boston area. All have informed their employers of their work for the website.

Fast friends since 2001, the Brandeis University alumni studied computer science, political science and philosophy and worked on the college newspaper.

The website's e-mail address includes the name "Dembitz" - the middle name of former Supreme Court Justice Louis Brandeis - in a nod to the group's alma mater, which was named for the judge.

The four aim to empower local reporters and citizen journalists, who may not have the resources of national media organizations, by posting the searchable database online.

"What this does is let someone in Kansas who has the right phone numbers search the data and see for himself," Yoni said.

Feedback so far has been "all positive," according to the group, with a few corrections made and several individuals saying their phone numbers were misdials.

Palfrey is a fan of the group's work. "God bless them," said Palfrey, who called the website's founders "the Brandeis Boys" during an interview.

"I think what they are doing is a great, patriotic service to this country," Palfrey said. "These fellows are democracy in action."

Palfrey's lawyer, Montgomery Blair Sibley, said that since Palfrey's assets have been seized, she could not post a similar database.

"We got quotes from five or six people that said [it] would cost between $15,000 and $30,000 to do this very thing they have done now," Sibley said. The attorney said the website has helped find about a dozen witnesses.

Not hired by Palfrey, the website team has had little contact with her or her attorney beyond a few e-mails and linking to one another's websites. Kevin and others have asked Sibley to rescan some of the phone records so they can be used for the website.

The project's only monetary expenditure so far was buying the domain for $10. The group said it has neither earned nor lost any money. "We joke about selling T-shirts," Igor said.

"It would be throwing another layer of complication on it by putting ads up," Kevin said, adding that that "might raise questions about our integrity."

But the site has cost everyone involved plenty of time, about 100 man-hours between the four. On Monday, July 9, when Palfrey's phone records were released, the group stayed up until 5 in the morning to complete the site.

After downloading the phone records, Igor used software to turn scanned images into text files, a process known as "optical character recognition," or OCR. Kevin then took the lead on writing the computer program to parse the phone numbers from the data, while Danny designed the website.

So far, there have been more than 100,000 visits to the site and close to 50,000 searches, according to the team.

Yet the data is not perfect. OCR cannot catch everything, they said, and many of the scanned images could not be translated into useable text files. Plus, "even if the data is accurate, it is a list of numbers, not a list of clients," Kevin said - hence a prominent disclaimer on the site.

More records are planned for release next week, according to Palfrey. Of the estimated 75,000 outgoing calls, no calls from 1997 have been made public.

"I understand there are more to come," said Palfrey, talking about potentially other big names in her phone records. "I think the real meat is the lobbyists here because they're all connected to a member of Congress."

# EXHIBIT 4

## Press Statement of Deborah Jeane Palfrey
### April 30, 2007

I would like to comment on a few topics including last Friday's disclosure by ABC News, that former Deputy Secretary of State Randall L. Tobias was a customer of my previous business, *Pamela Martin & Associates*. First, allow me to say how genuinely sorry I am for Mr. Tobias, his family and his friends. I unfortunately know first-hand the impact such a revelation can have upon one's life. My family and I have suffered considerably since the onset of the Government's charges against me, last October.

As my civil attorney, Mr. Montgomery Sibley can confirm both he and I endeavored diligently for five months - from October of last year until early March – to maintain the confidentiality of the client records, including those of Mr. Tobias, Mr. Harlan K. Ullman and various other individuals yet to be named. It was only when the Government's AUSA's – Catherine Connelly, Daniel Butler and William Cowden – refused every reasonable offer Mr. Sibley and I extended their way to reconcile the civil matter fairly and upon the Government's decision to indict me criminally, in early March – *expressly stating to us at the time that they did not care whether or not client identities were revealed* - did Mr. Sibley and I make the determination to utilize the records for my defense.

Initially, thought was given to raising the requisite funds needed to mount an expensive criminal defense by selling the records. Within a short time, this option quickly was abandoned for fear the records would end up in the possession of an unscrupulous person or persons. It should be noted, the assessment here not to sell the forty-six pounds of telephone invoices was made irrespective of the Court's order prohibiting me from doing so, but was made independently as an ethically conscientious choice, by Mr. Sibley and me. Nonetheless, the decision ultimately was made to hand over the records to a responsible media outlet, in this case ABC News, in New York – without compensation and/or promises/guarantees of any sort. Even though, ABC News is under no obligation whatsoever to me, I do expect their reporting to help identify othe potential witness for my defense. For me, this is a necessity, since the Government has placed me in the untenable position whereby, I do not have sufficient monies to undertake this extraordinarily expensive task on my own.

My hope defense witnesses could be found by combing through the information indeed is being realized. Friday's admission by Mr. Tobias, that he engaged in legal activity while a customer of my firm supports my position all along I operated a sexual – albeit legal – business for thirteen years, from 1993 to 2006. I am dismayed however, by Mr. Tobias's refusal to come forward until now with this extremely valuable exculpatory evidence. Had he done so earlier along with the many, many others who have used my company's services throughout the years, I most likely would not be in my current predicament.

As for those however, who disobeyed my directives, their signed contracts and participated in illegal behavior, be they client or subcontractor, I would expect the Government - as a matter of fairness and to avoid any hint of '*selective prosecution*' - to

charge each and every individual with the crimes of money laundering, racketeering and/or conspiracy, as well. After all, racketeering and conspiracy offenses in particular require two or more parties. Ironically, to date, I appear to be a single party of one.

Allow me to leave you with this thought, if I may. Surely, most people have established by now that mine is a very bizarre case. In fact, those few truly familiar with the actual details and nuances can attest without equivocation accordingly to this and much more. Even my now dismissed Federal Public Defender, Mr. A.J. Kramer has remarked in his sixteen years as Chief FPD for the District of Columbia, he has never seen a case quite like mine. Consequently, I would ask the press and media to put aside the titillation of the "Who's Who" list – at least in part - and instead investigate the disturbing genesis, the confounding evolution and the equally alarming continuation of this matter. I believe there is something very rotten at the core of my circumstance and without money to hire my own investigators, I must rely upon your acumen and talent to uncover the truth.

Thank you as always for your professionalism in this regard.

# EXHIBIT 5



# Brian Ross Reports on the D.C. Madam: Read the Complete Transcript

**Read the Transcript of the "20/20" Report on Jeane Palfrey, Known as the D.C. Madam.**

**May 4, 2007 —**

**Jeane Palfrey:** Good evening. May I help you?

This is the voice men heard ...

**Jeane Palfrey:** We have wonderful young ladies on staff ...

... when they called the Washington escort service run by the woman now known as the D.C. Madam.

**Jeane Palfrey:** We charge a flat 275 for an hour and a half. Were you looking to perhaps book an appointment this evening? How may I help you? And then we would take it from there.

Her name is Jeane Palfrey and over the course of 13 years, she says she fielded thousands of calls from some of Washington's most prominent men.

Men who answered ads for what was known as Pamela Martin and Associates, offering sophisticated, college-educated, attractive women.

**Jeane Palfrey:** I always defined it as "the Ann Taylor look." I wanted to make sure that they had that certain look. That they could walk into the Hay-Adams, for example, and not be questioned.

It was as upscale as it could be, and the business thrived.

**Jeane Palfrey:** The Four Seasons, the Mayflower.

**Brian Ross:** And your gals, as you call them, could walk in there and not be spotted by hotel security as ...

**Jeane Palfrey:** Not at all, not at all. These were not cheap women. These are very nice women who just needed to make a few extra dollars.

One was a professor at the University of Maryland. There was a successful real estate agent, even a lieutenant commander in the Navy.

Sometimes when Palfrey was unavailable, a legal secretary at one of Washington's top law firms, Akin Gump, would handle the calls as well as go out on calls herself.

Using her e-mail account at Akin Gump, the secretary told Palfrey why she wanted to be an escort: "A day a week would be fun and spa money."

**Brian Ross:** But were these women proud of what they did for you?

**Jeane Palfrey:** I don't think they were ashamed.

**Brian Ross:** You don't think so.

**Jeane Palfrey:** Oh, no. No, no, no, no.

The D.C. Madam actually ran her business across the country from Washington, out of her elegantly restored period home in Solano County, California.

The calls from Washington were forwarded to an extension in her laundry room.

**Jeane Palfrey:** Sometimes the washer and dryer were going, and if it was too loud, I'd leave and go into the other room.

**Brian Ross:** All from right here?

**Jeane Palfrey:** All from right here.

**Brian Ross:** This is all it takes to run an escort service?

**Jeane Palfrey:** Yeah, you need a phone. That's what you need.

Names of customers and their preferences were shredded every night, but Palfrey says she was doing nothing illegal because she was selling what she calls sexual fantasy, legal sex.

**Brian Ross:** And how do you define legal sex?

**Jeane Palfrey:** Well, illegal sex is prostitution, which is either intercourse of any type or oral sex. Anything else is considered basically legal.

**Brian Ross:** And do you think your women went over the line?

**Jeane Palfrey:** I sure hope not. I sure hope not. Ah, they...

**Brian Ross:** Can you say that with a straight face?

**Jeane Palfrey:** I'm, I'm saying that with a straight ...

**Brian Ross:** Really?

**Jeane Palfrey:** I'm saying that with a straight face.

A savvy businesswoman with a year of law school, Palfrey actually had her women sign a contract saying they would be terminated if they did anything illegal.

**Jeane Palfrey:** We're not talking about selling their bodies. We're talking about selling services. You've got to get your hair cut -- you get a service. This is a service. You're not selling your soul, for God's sakes.

**Brian Ross:** You certainly are taking the romance out of it.

**Jeane Palfrey:** There is no romance in it. It's a service. I don't think there's any romance in any of this.

But if she thought her carefully worked out legal strategy would protect her profitable business and comfortable lifestyle in California, she was wrong.

Seven weeks ago, as part of a Bush administration crackdown on prostitution, a federal grand jury indicted Palfrey, accusing her of running a large-scale prostitution ring that brought in more than $2 million.

But instead of accepting a deal from prosecutors to spend a few months in prison, Palfrey showed up in court to plead not guilty and tell prosecutors she would call all of her prominent customers as witnesses.

**Jeane Palfrey:** I told them to go to hell. Absolutely, they could go to hell with their deal.

In the 1990s, Palfrey served 18 months in prison in San Diego on charges of attempted felony pimping and says she is not going back.

**Jeane Palfrey:** I sure as heck am not going to be going to federal prison for one day, let alone, you know, four to eight years here, because I'm shy about bringing in the deputy secretary of whatever. Not for a second. I'll bring every last one of them in if necessary.

To prove just how prominent her customers were, Palfrey and her lawyer, Blair Sibley, turned over four years worth of long-distance phone records to "20/20."

We did not pay for them nor did we promise to share the results of our research.

Palfrey says federal agents had no interest in the records and studiously avoided learning about her male customers, as usually happens in such cases, according to a leading academic expert on the subject Melissa Farley.

**Melissa Farley:** The women are arrested; the women are incarcerated; the women are taken out in handcuffs, and the men who buy and use women in prostitution slowly and quietly slink off, and they're pretty much socially and legally invisible.

But not in the case of the D.C. Madam. Most prominent of her customers was Deputy Secretary of State Randall Tobias, who was in charge of the Bush administration's efforts to crack down on prostitution worldwide.

This was Tobias at an AIDS conference in 2004.

**Randall Tobias:** Abstinence works. Be faithful works. Condoms work.

Tobias resigned 24 hours after confirming to "20/20" that he had been a customer, saying, "He had some gals over to the condo for massages."

Tobias said it was no different than ordering a pizza and denied there was any sex.

**Melissa Farley:** I don't see the Johns as a victim; I don't see their privacy rights being victimized so much as I see them as predators.

The phone records trace back to thousands of men, including a career Justice Department prosecutor.

There are NASA officials; at least five military officers, including the commander of an Air Force intelligence squadron.

Also named by Palfrey is Harlan Ullman, a leading military analyst who wrote the book "Shock and Awe," a concept cited by the Pentagon in planning the war in Iraq.

Palfrey says she remembers Ullman as "Mr. U," -- remembers him well.

**Jeane Palfrey:** I think he was a disagreeable character. And there were some complaints about him, yes.

**Brian Ross:** From your women.

**Jeane Palfrey:** Yes.

**Brian Ross:** They didn't want to go?

**Jean Palfrey:** Because he was an unpleasant person.

In a statement to "20/20," Ullman's lawyer said any notion that Ullman's testimony would help Palfrey is incorrect.

Palfrey says Ullman and her other clients shouldn't blame her for their embarrassment.

**Jeane Palfrey:** This is on the head of the government. They looked at us and said we don't care about the clients. We just don't care.

The phone numbers also track back to Georgetown mansions and prominent CEOs, officials at the World Bank and the International Monetary Fund and lobbyists both Republican and Democratic.

But as usually is the case in Washington, much of it is dull. There were no members of Congress that we could find in these phone records, no White House officials.

Quite frankly, but for the few exceptions, most of the men on this list just aren't newsworthy, not even as customers of the D.C. Madam's escort service.

The most tragic aspect of this case is what happened to one of the women who worked for Jeane Palfrey.

Brandy Britton was a professor at the University of Maryland, with a Ph.D. in sociology when she started to work as a call girl for the D.C. Madam.

**Jeane Palfrey:** This is a woman who was divorced, who was trying to raise two, ah, high-school children, college-age children. Great job title, the great position, all the respect in the world, but she wasn't making enough money. So she decided to do a little moonlighting.

Last October, as the investigation into the D.C. Madam was gaining steam, Professor Britton was arrested by local police on prostitution charges, making big headlines in Baltimore.

**Jeane Palfrey:** And she was publicly outed, is a good way to put it, she was absolutely humiliated. Ah, she couldn't take the humiliation. Her whole life was destroyed. And she, she just, ah, ultimately committed suicide.

Jeane Palfrey says she's been humiliated too, but she won't let the government bring her down without a fight.

**Jeane Palfrey:** I just keep my head high. I guess I'm made of something that Brandy Britton wasn't made of. You know, I, I've got something in me. What that is, it's, it can't be defined, but there's something in me that won't let 'em get away with it. And I'm not going to let these bastards get away with it.

Copyright © 2007 ABC News Internet Ventures

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| DEBORAH JEANE PALFREY | ) |
| Defendant. | ) |
| AMERICAN BROADCASTING COMPANIES, INC. d/b/a ABC NEWS | ) |
| Non-Party Movant | ) |

Misc. Action No. _____

(Hon. James Robertson)

**FILED UNDER SEAL**

## ORDER

Upon consideration of Non-Party American Broadcasting Companies Inc.'s Motion to File Miscellaneous Action Under Seal, **IT IS HEREBY ORDERED**:

That the Motion is **GRANTED** and that American Broadcasting Companies, Inc.'s Motion to Quash Subpoena *Duces Tecum* and Memorandum of Law in Support are **SEALED** until further notice of this Court.

_____
Hon. James Robertson

Dated: _____

Copies to:

| Kevin T. Baine, Esq. <br> Williams & Connolly LLP <br> 725 Twelfth Street, N.W. <br> Washington, D.C. 20005 <br><br> *Attorney for Non-Party Movant* | Montgomery Blair Sibley, Esq. <br> Law Offices of Montgomery Blair Sibley <br> 1629 K Street, Suite 300 <br> Washington, D.C. 20006 <br><br> *Attorney for Defendant-Respondent* |